CLARENCE E. CRAFTS *vs.* DAVID S. RAY, Town Treasurer.

PROVIDENCE—JULY 20, 1900.

PRESENT: Stiness, C. J., Wilbur, Douglas, and Dubois, JJ.

(1) *Constitutional Law.   Taxation.   Exemptions.*

Pub. Laws R. I. cap. 386 and 387, ratifying the acts of a town and the town
council thereof in exempting certain property of a corporation, to be there-
afterwards located in said town, from taxation, and by the terms of said
acts expressly exempting said property from taxation for a term of years,
are constitutional and not violative of article 1, section 2, of the constitu-
tion of Rhode Island, which provides that "the burdens of the State ought
to be fairly distributed among its citizens."

(2) *Taxation.   Mandatory and Directory,   Exemptions.*

The form of this clause of the constitution is advisory and directory, not
mandatory.   The statement of a result to be reached, which leaves the
mode of reaching it to the discretion of the legislature, gives no power to
the court to say that a law which may tend to that result is void, even
though it may seem to be unwise or unjust.

An act relating to taxation cannot be held to be unconstitutional upon gen-
eral or uncertain expressions, but only upon plain restrictions of the con-
stitution.

---

Article 1, section 2 of the constitution necessarily leaves to the legislature the mode of carrying it out, with no other restriction than that the burden shall be fairly distributed. This clearly implies a reasonable power of exemption.

(3)  *Exemption from Taxation.*

The power of the legislature to make exemptions from taxation being conceded, where a statute authorizes the electors of a town to exempt from taxation for a period of years such manufacturing property as may thereafter be located in said town in consequence of such exemption, and where a majority of the tax-payers authorize and the town council approve such exemption, the court cannot say that the statute is unfair and exceeds the legislative discretion.  The matter of fairness is left to the tax-payers themselves, and the action is taken with a view to general public benefit.  *Dictum* in *McTwiggan* v. *Hunter*, 19 R. I. 265, overruled.

ASSUMPSIT.  The action was commenced in the District Court of the Seventh Judicial District and was certified to this court, jury trial waived, upon an agreed statement of facts, as follows:

"1.  That Clarence E. Crafts is a citizen of the town of East Providence and an owner of real estate therein.

"2.  That on September 20th, 1898, a tax of $20.00 was assessed on said real estate, valued by the assessors at $1,600.00.

"3.  That said tax not having been paid when due, said real estate was levied on in accordance with General Laws R. I. cap. 48.

"4.  That after notice of said levy and of threatened sale, the plaintiff paid said tax with interest, expenses of levy, etc., under protest to the collector of taxes of said town, the total sum so paid amounting to $25.89, a copy of said protest being annexed hereto and made a part hereof, marked 'Exhibit A.'

"5.  That the plaintiff afterwards presented his claim for said amount to the town council of said town.

"6.  That forty days having elapsed without repayment of said amount by said town, he brings the above action to recover the amount so paid, with interest, on the ground that said assessment was illegal and unconstitutional.

"7.  That certain property of the Grosvenordale Company

and the American Electrical Works, corporations located in said town, was not included in the assessment for said year, but was intentionally omitted from the assessment by the assessors of taxes in good faith, without any intention or purpose to enable said corporations to escape or be free from legal taxation, with the knowledge that it had been exempted by previous boards of assessors, and in full belief of the duty of the town to exempt said property from taxation and of the validity of said exemption.

"8. The assessors fully believed the aforesaid property to be exempt from taxation for the following reasons:

"A. By virtue of the authority vested in the town by Chap. 1088 of the Public Laws, passed May 21, 1892, the electors of said town had authorized the town council of said town to exempt for a period not exceeding ten years such manufacturing property as should thereafter be located in said town in consequence of such exemption, and the land on which such property should be located.

"B. The town council voted to exempt the aforesaid property of the Grosvenordale Company and American Electrical Works for a period not exceeding ten years, from and after the 11th day of April, 1892, and the 22d day of March, 1893, respectively, said corporations having agreed to locate and having subsequently located manufacturing property in said town in consequence of such exemption, the aforesaid resolutions of the town council and the electors being in strict accordance with the provisions of said Chap. 1088.

"C. The General Assembly, by the passage of Public Laws R. I. cap. 386 and 387, passed April 21 and 22, 1896, ratified the aforesaid acts of the town of East Providence and expressly exempted the said corporations from taxation upon the aforesaid property omitted from the assessment of 1898.

"D. The assessors believed the aforesaid resolutions of the town and acts of the General Assembly to be valid and binding upon them, and that it was their duty to omit said exempted property from the assessment."

Heard on constitutional question, and constitutionality of act affirmed.

STINESS, C. J.   The plaintiff sues to recover a tax paid by him in 1899, under protest, upon the ground that it was illegal.   The case was submitted to the District Court upon an agreed statement of facts, and certified to this court under Gen. Laws, cap. 239, § 1.   The facts show that the assessors of taxes of East Providence intentionally omitted from assessment the manufacturing property of the Grosvenordale Company and the American Electrical Works, and that they did so under a vote of the town council, authorized by the electors of said town, whereby said properties were exempted from taxation for a period of ten years from and after April 11, 1892, and March 22, 1893, respectively; said corporations having agreed to locate and having subsequently located manufacturing property in said town in consequence of such exemption.

The right to make such an exemption was given in Pub. Laws cap. 1088, May 21, 1892 ; but it was held in *McTwiggan* v. *Hunter*, 19 R. I. 265, that the statute was not retroactive and, hence, did not authorize the contract of April 11, 1892, previous to its passage, no further action having been taken. By Pub. Laws, cap. 386, January session, 1896, the action of the town of East Providence was ratified by the General Assembly, and the property of the Grosvenordale Company was expressly exempted from taxation for a period of ten years from April 11, 1892 ; and by chapter 387 the same action was taken with reference to the property of the American Electrical Works for the period of ten years from March 22, 1893.

(1)    The question raised is whether the acts were unconstitutional and void, upon the ground that the constitution of the State provides, article 1, section 2, that "the burdens of the State ought to be fairly distributed among its citizens."   It is also claimed that the effect of the acts was to take the property of citizens under the guise of taxation and to use it in

aid of the enterprises of others which are not of a public character, thus perverting the right of taxation, which can only be exercised for public purposes, to aid individual interests and private purposes of profit and gain.

The question presented is one of great importance. The taxing power is one of the most delicate, difficult, and far-reaching functions of government. It affects all classes and all property. Under our form of government, however, it is, theoretically, a self-imposed burden. Since the days of the Revolution, taxation has been recognized as a representative act.

The power to tax necessarily implies a power to exempt. Taxation being a legislative power, it is not the province of a court to review it, except in cases where the power is limited by constitutional restrictions. The court is then to say whether the legislature had power to pass a given law ; not whether it should have passed it.

The provision of our constitution which the plaintiff claims to be a limitation on the taxing power is the clause quoted above : '' All laws, therefore, should be made for the good of the whole ; and the burdens of the State ought to be fairly distributed among its citizens.'' The form of this clause is advisory ; not mandatory. Ames, C. J., *In the Matter of Dorrance Street*, 4 R. I. 230, 249, spoke of it as ''addressed rather to the General Assembly, by way of advice and direction, than to the courts, by way of enforcing restraint upon the law making power.'' But he added : '' We do not mean to say that a law, purporting to impose a tax or burden of some sort upon the citizen, may not be in its distribution of the burden, both in design and effect, so outrageously subversive of all the rules of fairness, as not to come so far within the provisions of this general clause, as to enable the court to save the citizen from oppression by declaring it to be void. But evidently a wide discretion with regard to the distribution of the burdens of the State amongst the citizens was intended to be reposed in the General Assembly by the will of the people, as signified in this clause of the constitution. The

form is 'ought to be,' the word is *fairly* distributed, not 'equally' even,—unless equality be fair, which is not always in any sense, and never in some senses; and especially the words are not 'equally upon property,' or words to that effect, as in the constitution of Louisiana, . . . Indeed, the language in question can hardly be said to impose any restriction upon the General Assembly at all, except what would be imposed by the fact of our free institutions, and the general principles of constitutional law, here and everywhere in this country prevalent. Had the constitution been wholly silent upon this subject, a greater latitude could not have been given by these principles than seems to have been studiedly implied in the form, spirit, and general terms of the sentence."

The case in which these words were used was different from the case at bar in this—that it involved an assessment for a benefit arising from the opening of a street, and not an ordinary tax. But the words quoted are entitled to great weight as an interpretation of the constitution, not only from the eminence of Judge Ames as a jurist, but also from his prominence as a member of the General Assembly when the constitution was adopted giving him a peculiar opportunity to know the intended scope of its provisions. Further evidence that the clause in question has been understood to be directory merely is found in the fact that in the proposed revision of the constitution, reported to the General Assembly in 1898, the commission recommended a change from the directory form of "ought to be fairly distributed among its citizens," to the mandatory form of "*shall* be fairly distributed."

(2) Historically, therefore, the clause has been treated as directory rather than mandatory. Nevertheless, a declaration of right or duty which has been deemed sufficiently important to be embodied in the constitution should not be put aside as a mere generality, if it is of such a character that effect can be given to it as the equivalent of a more positive statement. But suppose the clause in question to

be equivalent to the mandatory form : can we hold it to be a limitation on the power of exemption ? Undoubtedly taxation may be included among the burdens which are to be fairly distributed. From this postulate the plaintiff argues that an exemption is contrary to the practical direction of the constitution, and, hence, unconstitutional. This conclusion does not follow. There are burdens of citizenship besides taxation. Indeed, taxation is not strictly a burden incidental to citizenship, since persons not citizens of the State may be taxed for property within it. Jury and military duty at once come to mind as among the burdens of the State. Hence, if it be held that because taxation is a burden which " ought to be fairly distributed " the legislature has no power to make exemptions, it must follow that no exemptions from jury or military duty could be made. But immediately following the adoption of the constitution the act relating to jurors exempted some, but not all, State and town officers, and some who had no public duties, such as cashiers of banks, and all persons over sixty-five years of age. The act relating to the militia embraced only white male citizens not over forty-five years of age, and specially exempted many, but not all, State and town officers ; persons who had held the office of governor or lieutenant-governor of the State ; the inhabitants of New Shoreham and Jamestown ; and all persons who had conscientious scruples against bearing arms.

In the act relating to taxes, houses for schools, academies and colleges, owned by any company or corporation, and the land on which they stood, were exempted. These exemptions have not only been continued but have been enlarged, without any question as to their validity. It may be said that these exemptions are fair, because they apply to classes of persons. Some of them are essentially personal ; but if they are to be sustained only on the ground of fairness, then the power of the General Assembly to make exemptions is no longer a question. We have cited these instances to show that immediately upon the adoption of the constitution, and continuously since, the power of the General Assembly to

make exemptions from the burdens of the State, notwithstanding the clause above quoted, has not been questioned. The same conclusion was forcibly stated by Tillinghast, J., in *Brown University* v. *Granger*, 19 R. I. 704 : "That it means that the General Assembly has no power to exempt any property whatever from taxation, or that property theretofore exempted by charter was to be affected thereby, is wholly unreasonable. The whole course of State legislation, from the adoption of the constitution to the present time, conclusively negatives any such construction." It is axiomatic that a law is to be held constitutional unless it violates a provision of the constitution. In view of the equality of the branches of government, the judicial cannot annul the action of the legislative branch unless its duty to do so is plain and peremptory. Hence the provision which a court is asked to apply as a limitation of legislative power must also be plain and peremptory. The statement of a result to be reached which leaves the mode of reaching it to the discretion of the legislature gives no power to the court to say that a law which may tend to that result is void, even though it may seem to be unwise or unjust. Whether, therefore, a declaration in a constitution is a limitation of the power of the legislature, depends upon its terms. As stated in Cooley's Cons. Lim. 6th Ed. 200, 201 : "Any legislative act, which does not encroach upon the powers apportioned to the other departments of the government, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution and the case shown to be within them." See also *State* v. *Narragansett*, 16 R. I. 424 ; *Carr* v. *Brown* 20 R. I. 215 ; *State* v. *Dalton*, 22 R. I. 77. We have already said that taxation is a legislative function. In *Meriwether* v. *Garrett*, 102 U. S. 472, 501, Waite, C. J., announced as the proposition of the court : "The power of taxation is legislative, and cannot be exercised otherwise than under the authority of the legislature."

This being so, a law relating to taxation cannot be held to be unconstitutional upon general or uncertain expressions, but only upon plain restrictions.

Courts have been very strict in requiring these plain limitations. *Henley* v. *State*, 98 Tenn. 665 ; *Sharpless* v. *Mayor*, 21 Pa. St. 147 ; *People* v. *Gillson*, 109 N. Y. 389, 398 ; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 516 ; *Walker* v. *Cincinnati*, 21 Ohio St. 14 ; *Phœnix Co.* v. *Fire Dept.*, 23 So. Rep. 843. In cases of taxation the following are examples. In *Booth* v. *Woodbury*, 32 Conn. 118, relating to a gratuity to men drafted in the civil war, the court said : "If there be the least possibility that making the gift will be promotive in any degree of the public welfare, it becomes ·a question of policy and not of natural justice, and the determination of the legislature is conclusive." Under the constitution of Wisconsin, requiring that the rule of taxation shall be uniform, it was held that an exemption of certain railroad lands from taxation did not violate this provision. *Wisconsin R. R.* v. *Taylor*, 52 Wis. 37. *Lund* v. *Chippewa*, 93 Wis. 640. Constitution of Louisiana : " Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value." Held that the legislature might exempt a certain amount of property and income. *New Orleans* v. *Fouchy*, 30 La. An. 910.

Constitution of New Jersey : "Property shall be assessed for taxes under general laws and by uniform rules according to its true value." Held that this did not preclude the legislature from exempting shares in all corporations except banks. *State* v. *Collins*, 43 N. J. L. 562.

Constitution of Alabama : "No man or set of men are entitled to exclusive, separate, public emoluments or privileges, but in consideration of public services." Held that the legislature might commute the tax of corporations. *Daughrill* v. *Alabama*, 31 Ala. 91.

In *Bank* v. *New Albany*, 11 Ind. 139, it was held that the legislature could exempt a bank from taxation for municipal purposes, and in *Mills* v. *Cook*, 56 Miss. 40, that the legislature could exempt from taxation a private manufacturing corporation.

The rationale of these decisions is that although there have

been constitutional restrictions on taxation, from which it might be argued that the same reasons would apply to the case in question, yet, if the case was not necessarily included within the restriction and there was no specific provision of restraint, the court could not declare an act void which the legislature had passed upon the subject within its proper sphere. Applying this doctrine to the case at bar, we have a constitutional provision, which necessarily leaves to the legis- lature the mode of carrying it out, with no other restriction, if we assume it to be one, than that the burden shall be fairly distributed. This clearly implies a reasonable power of exemp- tion, at the least, since the distribution is not to be positive, but fair. Hence the power of the General Assembly to make exemptions is clear.

The cases cited by the plaintiff are distinguishable. In *Brewer* v. *Brewer*, 62 Me. 62, the constitutional provision was : " All taxes upon real estate, assessed by authority of this State, shall be apportioned and assessed equally, according to just value thereof." An act which authorized towns to exempt manufacturing establishments thereafter erected was held to violate this provision of the constitution, because, as taxes were apportioned among towns in the ratio of their valuations, if some towns exempted such establishments and others did not, the apportionment would not be equal. In *Allen* v. *Jay*, 60 Me. 124, an act authorizing a town to loan money to a private enterprise was held to be unconstitutional. In *Lancaster* v. *Clayton*, 86 Ky. 373, the constitution pro- viding " that no man or set of men are entitled to exclusive, separate, public emoluments or privileges from the com- munity, but in consideration of public services," it was held that an act exempting a hotel estate was in violation of this provision.

Without reviewing the cases in detail, they deal, generally, with two classes of acts : those which authorize direct aid to private affairs, and those which violate some express or evi- dent restriction of the constitution. With such a doctrine we should not disagree.

It is argued that the exemption in this case is equivalent to taking a tax-payer's money and giving it to the manufacturer. It is not quite that. The theory of the transaction is that a public benefit will accrue to the town and its inhabitants, by the introduction of the business enterprise, equivalent to an exemption from taxes for a certain time, and on this ground it is offered. Suppose the offer is not accepted, and the manufacturer does not build in the town. The plaintiff's tax, for example, would be just the same in either case. A.'s money is not taken to be given to B., but, for a time, B. is not taxed. Possibly A.'s tax might be a trifle smaller if B. should be taxed for his added property, but how does this differ in principle from other exemptions to which we have already referred? It is a question of policy, with which the court has nothing to do, the legislature having the power to decide. The remedy is in the hands of the people and not of the court. The property of a town is benefited, both in value and income, by the introduction of business and the consequent increase of inhabitants. When, therefore, one erects a factory under a contract of exemption, the consideration for which is an expected public benefit, the case is quite different from that of a pure gift.

(3) Conceding the power of the General Assembly to make exemptions, the question remains as to its fairness; and the argument is pressed that these laws are so manifestly unfair that the court ought to say that they exceed a permissible legislative discretion. The question of unfairness is quite distinct from approval. Under our system the towns order their own taxes. By the statute in question, the electors themselves make the exemption. Doubtless they see an advantage in it. Much has been said of late in favor of the *referendum.* Here is an example of it, and the court would be slow to say that an exemption is unfair which a majority of the tax-payers authorize and the town council approve. We appreciate the force of the argument that such a law permits unseemly competition to entice business from another town, but the point is one of policy and not of law. It

should be addressed to the legislature and not to the court. It may be said that it is unfair to tax one whose factory is built, while a new competitor is exempt. This seems to be so at first glance, and in *McTwiggan* v. *Hunter*, 18 R. I. 776, a case of intentional and unauthorized omission, we said that it would be illegal. The acts in question were not then before us. In *McTwiggan* v. *Hunter*, 19 R. I. 265, the constitutionality of Pub. Laws, cap. 1088, not being directly involved, we remarked, *obiter*, that it was at least susceptible of doubt. But now, upon a closer view of the question, we are unable to say that the laws before us violate the constitution either in respect of power or fairness, since the general power is clear; the matter of fairness is left to the tax-payers themselves; the burden of other tax-payers is not increased, if the new property would not have come into the town without the exemption; and the action is taken with a view to general public benefit. As stated in *Colton* v. *Montpelier*, 45 Atl. Rep. 1039, by the Supreme Court of Vermont, in regard to a similar statute: "The primary object of this statute is not to aid and benefit private persons for private ends, but its purpose is to benefit the public at large by increasing, in the end, the resources of the State and its taxable property through the establishment of new industries." It was held to be constitutional, although the bill of rights in the constitution of Vermont, in this respect, is much more explicit than our own.

Our conclusion is that Pub. Laws, cap. 386, 387, are not unconstitutional.

The court takes pleasure in acknowledging the aid it has received from the able briefs on both sides of this case.

Case remitted to District Court of Seventh Judicial District with direction to enter judgment for defendant for costs.

*John A. Tillinghast,* for plaintiff.

*Edward L. Mitchell, Town Solicitor, and Edwards and Angell,* for defendant.