CITY OF CENTRAL FALLS *vs.* WILLIAM J. HALLORAN *et al.*

MARCH 30, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J. This is a petition for certiorari to review the action of the Blackstone valley sewer district commission in amending its rates for treatment of sewage. We issued the writ and the commission made due return thereto by certifying to this court all of its records pertaining to the cause.

The following facts appear from the return. On August 18 and September 1, 1959 the commission held a hearing on the matter of fixing the rate to be charged to persons whose property is directly connected with the Blackstone valley sewer district project and to municipalities whose sewerage

systems are connected with the project including storm and infiltration water collected from such municipalities. The sewerage system of the city of Central Falls, petitioner here, includes storm water and is connected with the project. It was represented at the above-mentioned hearings by its mayor and solicitor, who actively opposed the fixing of a rate which was based in part on the volume or flow of storm water from its sewerage system into the project. They contended that the commission was without authority to make any assessment for storm water.

The commission nevertheless rendered a decision on October 30, 1959 assessing municipalities as follows:

> "B. The rate and charge of $165.00 per million gallons of industrial wastes and/or sewage including storm and infiltration water collected from each and every municipality in said District and treated shall be assessed in accordance with the following formula against each municipality in said District for that part of the metered flow of wastes from each municipality which is in excess of those total flows of wastes collected and treated from all indirect and direct connectors in each municipality respectively."

The correctness of the formula therein referred to, petitioner concedes, is not in dispute here and therefore need not be quoted.

The Blackstone valley sewer district commission is a state agency created by G. L. 1956, chap. 21 of title 46, for the purpose of abating the pollution which originates in the sewage and industrial wastes in several municipalities and industries located in the Blackstone River and Moshassuck River valleys. The commission was given broad powers to define the operating limit of the project within the geographical district area specified in §46-21-3 (b) of the act as follows: " 'Blackstone valley sewer district' shall mean and include the cities of Pawtucket and Central Falls and the towns of East Providence, Lincoln and Cumberland, or

such portion or portions thereof as may, from time to time, be designated by the commission."

It is clear that it was the express intention of the legislature to clothe the commission with such authority as would enable it to deal effectively with the problem of pollution in the area without consulting the wishes or convenience of the municipalities involved, at least insofar as their handling of any part of the pollution problem committed to the commission was concerned. In other words it is reasonable to construe the act as intending to make the policy of the commission paramount in all such matters.

We understand petitioner is not disputing this general principle. It contends first that the commission has exceeded its statutory authority to treat "sewage" and "industrial wastes" by unlawfully assuming to include thereunder "storm water" which petitioner inferentially argues does not contribute to pollution and therefore needs no treatment. Secondly it contends that the act itself is unconstitutional and void in that it violates the due process clause of art. XIV of amendments to the federal constitution, and secs. 1 and 2 of art. IV of the state constitution. At the oral argument before us petitioner stressed the constitutional issue as its chief point. We shall therefore consider it before discussing its first point.

The gist of its contention that the act violates the federal due process clause is that the basis for the assessments on the municipalities is unreasonable and confiscatory and therefore deprives petitioner of its property without due process of law. It bases this argument largely on the ground that, since the act requires rates to be assessed which will be sufficient to liquidate the cost of the project and since it is possible under the act for other communities designated by the commission or segments thereof to become beneficiaries of the project long after it has been substantially or wholly paid for by those presently compelled to

use it, the rates amount in effect to a capital levy and not merely to payment for the cost of the service rendered.

At first blush the argument appears to have merit. However, on closer analysis this is not so. The sewer district is a governmental instrumentality created by the state to promote the public health and welfare and to conserve and protect a natural resource of the state. It has been said, and well said, that a river is a treasure. As it meanders or rushes through a valley with its tributaries naturally draining its watershed it is indeed "a thing of beauty and a joy forever." But when man utilizes it as an open sewer it becomes a public nuisance prolific of harm and infection far beyond the original source of pollution.

To eradicate so great an evil there can be no doubt that if need be the state may exercise its power to tax. In effect it has done that by establishing the sewer district and pledging the credit of the state to build the project with the provision that its agent, the commission, should assess rates sufficient to liquidate the cost of the project as well as pay for the service rendered thereby. In our opinion this was constitutional notwithstanding that it amounts to a levy upon only a particular section of the state. Such a levy for a public improvement to abate a public nuisance may be confined to those municipalities where the nuisance originates.

At least a municipality has no standing to complain on the score that its rights under the federal constitution are violated by the act. *Joslin Mfg. Co.* v. *City of Providence*, 262 U. S. 668. Nor has a municipality any valid reason to complain because at some indefinite time in the future some other area in the district which has not contributed to the cost of the project from the beginning may be allowed to benefit. This is not in our opinion equivalent to a taking of the municipality's property without due process of law within the meaning of that clause in the fourteenth amendment to the federal constitution.

We perceive no merit in petitioner's contention that the act violates the state constitution. There is no inconsistency between the act and sec. 1 of art. IV of the constitution. The general assembly has plenary power to subject municipalities to its direction and control except where the home rule amendment, so called, expressly forbids. *Horton* v. *City Council,* 27 R. I. 283; *Blais* v. *Franklin,* 31 R. I. 95. There is even less reason to argue as petitioner does that the act violates sec. 2 of art. IV of the state constitution which vests legislative power in the general assembly and requires the concurrence of the two houses thereof to the enactment of laws. In our opinion the act does not unlawfully delegate legislative power to the commission. In the execution and administration of the powers and duties conferred upon it the commission has been vested with discretion to act within well-defined limits fiscally and geographically. It is confined to a specifically defined district and it is charged with assessing rates sufficient to effectuate the clearly-expressed legislative objectives. In no real sense is there any delegation of true legislative power in this grant of authority to a state agent. See *Blais* v. *Franklin, supra.*

In passing upon these questions we have considered them narrowly in the light of petitioner's status as a municipality and not from the viewpoint of an individual ratepayer. Whether a municipality being a mere creature of the general assembly had any right to challenge the legislative act in the circumstances here we did not consider since the state raised no objection on that score. Ordinarily a municipality is subject to the will of the legislature. *City of Providence* v. *Moulton,* 52 R. I. 236; *Joslin Mfg. Co.* v. *City of Providence, supra.*

We now recur to petitioner's first point. It contends that sewage as defined in §46-12-1 of the act cannot reasonably be interpreted to include storm water, and we agree. We also concur in its contention that the legislature did not

intend to give the commission power to require storm water to be treated by the project as a contributary to the pollution which the legislation was designed to abate. But that question is not the problem which confronts us here. As we understand the record the commission does not require petitioner to discharge storm water into the project.

The real difficulty arises from the fact that in petitioner's own sewerage system storm water and sewage are indistinguishably commingled. The total effluent is thus discharged into the project and must necessarily be metered in its totality to determine the assessment upon petitioner. That petitioner is thus paying a higher assessment than it should simply for treatment of its sewage is not the result of an unreasonable rate but solely because its own sewerage system is designed to receive storm water.

If we are correct in our understanding of the record the petitioner has not proposed any method by which the proportion of storm water to sewage could be determined with reasonable accuracy so as to enable the commission to make a pro rata reduction in the assessment. And we surmise from what was said at the oral argument that the commission considers any effluent that goes into the project through no act of the commission must be charged the going rate as contributing to the burden thereby imposed upon the project. However these things may be, we must conclude from the record that there is no merit in the petitioner's contention.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are returned to the commission with our decision endorsed thereon.