TOWN OF LINCOLN et al.

v.

CITY OF PAWTUCKET et al.

No. 98–325–Appeal.

Supreme Court of Rhode Island.

Feb. 7, 2000.

James P. Marusak, Peter J. McGinn, Steven M. Richard, Richard J. Welch, Providence, Holly R. Ialongo, Edmund L. Alves, Jr., Providence, Richard S. Cardozo, Gregory S. Dias, East Providence, for Plaintiffs.

Terence J. Tierney, Providence, Gary Powers, North Kingstown, Christopher E. Fay, Cranston, Frank J. Milos, Jr., for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on the appeal of the municipalities of Lincoln, Smithfield, Cumberland, and East Providence, and Sue P. Sheppard, a resident and property owner in the Town of Lincoln (collectively referred to as plaintiffs), from a judgment entered in the Superior Court denying the plaintiffs' claims for relief. We affirm the judgment of the Superior Court. The facts of the case as found by the trial justice are as follows:

> "The Narragansett Bay Commission [(NBC)] has developed a large-scale project, the object of which is to abate what are known as combined sewer overflows or CSO's which occur in the communities of Providence, Pawtucket, and Central Falls. Combined sewer overflows are overflows of storm water and sewer water which flow into one of the state's rivers when a significant rain storm occurs and the sewer system overflows.
>
> "The overflow is made up of a combination of sewer water and storm water which otherwise would be diverted, by assistance, to the appropriate treatment facility. During a rain event, the system regulates the flow and permits the

overflow to discharge through the CSO outfall pipes into the river. Combined sewer overflows into the State's water systems are unlawful under the Federal Clean Water Act. The remediation project is a multi-million dollar project, the cost of which will be spread among the rate payers that fall within the district comprising Providence, Johnston, North Providence, Pawtucket, Cranston, Central Falls, Lincoln, Cumberland, East Providence, and part of Smithfield. I don't think I've left anyone out.

"The project is designed to remediate CSO's occurring in both of the Narragansett Bay Commission service areas; that is, the Field's [*sic*] Point service area and the Buckland Point service area. The points at which the CSO's occur all lie within Providence, Central Falls, Pawtucket and East Providence. None occur in the towns of Cumberland[,] Lincoln, or Smithfield, nor do any occur in Johnston or North Providence. The sewer system for the NBC municipalities is such that the outlying communities of Johnston, North Providence, Smithfield, and Cumberland are upstream communities whose sanitary flows feed into the Narragansett Bay Commission interceptors which then transmit those sanitary flows to one of the two treatment facilities or into a river in the event of a rain storm causing an overflow. Lincoln, Central Falls, Pawtucket and Providence and East Providence are down stream communities in that by the time their sanitary flow joins the system, the system already contains the sanitary flow from other upstream communities. A small part of Central Falls enjoys an upstream position in that the sanitary flow joins the Moshassuck Valley interceptor to the north of Lincoln, Cumberland and Pawtucket and ultimately Providence and East Providence.

"The towns of Lincoln and Cumberland have constructed, or are in the process of constructing, sewer and storm water systems which separate storm water from sewer flow. This type of system is called a separated system. For the most part it is only sewer water which flows from these communities into the NBC interceptors. The communities who have older systems have what are call [*sic*] the combined systems. There, the sewer water and storm water is not separated. The effect is to increase the sanitary flow into the interceptors. It is the addition of storm water during a rain event which causes the overflow into the State's rivers. But, while it is primarily the storm water from the older combined systems which precipitates any given CSO, the sewer water component of the CSO is made up of sewer water flowing from each of the municipalities lying upstream from the site of the CSO. It is the combined sanitary flow from all of the municipalities lying upstream from the CSO which empties into the river. This includes waste water from all the upstream communities.

"The unrefuted testimony of Paul Pineau [*sic*], director of NBC, was that the sanitary flow from Cumberland, Smithfield and Lincoln increases during a rain event, although the specific cause of the increase is unknown. The sanitary flow from Cumberland, Smithfield, and Lincoln is within the capacity of the NBC interceptors, regardless of whether or not that flow is increased during a rain event.

"Broadly speaking, Lincoln, Smithfield, and Cumberland each claim that, as individuals charged rates under the NBC rate scheme, they are unfairly being charged with the cost of remediating a problem which would not exist but for the downstream combined system. It's a broad claim of all of the plaintiffs.

"While the plaintiffs here have addressed themselves to the C[S]O's occurring in Buckland Point service areas, the NBC project at issue directs itself to the remediation of C[S]O's in Providence as well as Pawtucket and Central Falls. The proposed tunnel and tank system

would be constructed throughout Central Falls, Pawtucket and Providence. The water users of all of the ten NBC municipalities would bear the cost of the project. Johnston, North Providence and East Providence are upstream of the Field [*sic*] Point Service Area. By their exhibits, their sanitary flow joins the C[S]O's in Providence."

The parties entered into sixty-four stipulations of fact, but the heart of the ultimate factual situation is adequately portrayed by the findings of the trial justice. We shall add for clarity that the parties have stipulated that the former Blackstone Valley district commission (BVDC) has now been merged into and succeeded by the Narragansett Bay water quality management district commission (NBC). This latter agency has been authorized pursuant to G.L.1956 § 46–25–67 and § 46–25–58(*l*) to issue revenue bonds, notes, and obligations, to implement the remediation of combined sewer overflows (CSO's), and to make capital improvements to eliminate or palliate pollution of Narragansett Bay. The trial justice also found that NBC has developed a large-scale project, the objective of which is to abate CSO's that occur in Providence, Pawtucket, and Central Falls. CSO's are overflows of storm water and sewer water that flow into one of the state's rivers when a significant rainstorm occurs and the sewer system overflows. Section 46–25–5(9) empowers NBC to assess users a reasonable charge for the use, operation, maintenance, and improvements of the system. Pursuant to § 46–25–22, NBC has the further authority to collect assessments against users in the same manner as taxes are collected by municipalities. Unpaid charges will constitute a lien against users' real estate. General Laws 1956 § 46–25.1–1(d) empowers NBC with the authority and responsibility to construct, operate, and manage sewer treatment facilities that deal with waste from the Blackstone and Moshassuck Valleys. The Legislature in § 46–25–2 made certain specific findings:

"(1) There exists [*sic*] in the Providence metropolitan area and Narragansett Bay severe water quality problems resulting from the discharge of pollutants, conventional, and unconventional, into Narragansett Bay.

"(2) It is further found and declared that Narragansett Bay may be the greatest natural resource of the state of Rhode Island, and continuing discharge of these pollutants jeopardizes the environmental integrity of the entire Narragansett Bay and creates severe and detrimental ecological and economic impact upon the people of the state of Rhode Island.

"(3) It is further found and declared that because of the scope and complexity of the work necessary to correct and minimize these pollution discharges and the scope of financing required, local municipal governments in the Providence metropolitan area have been unable alone to cope properly and immediately with the magnitude of the pollution discharges.

"(4) It is further found and declared that economy and efficiency dictate the desirability for an overall plan for dealing with pollution discharges in the Narragansett Bay and the Providence metropolitan area.

"(5) It is further found and declared that the most effective and efficient method to combat the discharge of pollutants in the Narragansett Bay is to create a Narragansett Bay water quality management district commission, to be charged with the acquisition, planning, construction, financing, extension, improvement, and operation and maintenance of publicly owned sewage treatment facilities in the Narragansett Bay water quality management district, with appropriate provision for a portion of the financing of the activities to be undertaken by the pledging of the full faith and credit of the state of Rhode Island.

"(6) Title 46, chapter 21 created the Blackstone Valley district commission

and charged it with the planning, construction, operation, and maintenance of facilities to deal with the sewage and industrial wastes which originate in municipalities and industries located in the Blackstone and Moshassuck Valleys and are discharged into the waters of the state including the Seekonk and Blackstone rivers which flow into the Narragansett Bay without proper treatment.

"(7) Economy, efficiency and technological advances dictate the desirability of having one entity to formulate, coordinate, and regulate an overall plan to reduce the discharge of sewerage and industrial wastes originating from the Blackstone and Moshassuck Valleys into the waters of this state and the discharge of pollutants into Narragansett Bay from the Narragansett Bay water quality management district.

"(8) The most effective and efficient method of effectuating such an overall plan is to merge the Blackstone Valley district commission with and into the Narragansett Bay water quality management district commission.

"(9) The most effective and efficient method of effectuating an overall plan for dealing with discharges in the watershed of the Narragansett Bay is the merger, consolidation, acquisition, operation and management of other sewage treatment facilities located in the state with or by the Narragansett Bay water quality management district commission as the commission may from time to time determine."

The NBC district is defined in § 46–25–3(5)(i) to include the City of Providence as well as the Cities of East Providence, Pawtucket, and Central Falls, the Towns of Lincoln and Cumberland, and a portion of the Town of Smithfield lying northeast of the Douglas Pike, as well as those portions of the City of Cranston and portions of the Towns of Johnston, North Providence, and Lincoln formerly served by the City of Providence sewage treatment system.

The foregoing statutory provisions authorize NBC to deal with the statewide problem of pollution of Narragansett Bay by remediating the CSO problems emanating from communities in the Blackstone Valley and other contiguous areas. The program would be financed either by revenue obligations issued by NBC, or, if deemed appropriate, by general obligation bonds pledging the full faith and credit of the State of Rhode Island. The legislative findings clearly set forth that the municipalities of the metropolitan Providence area as well as the Blackstone and Moshassuck Valley areas were unable individually to deal with the problems of discharge of sewage into the waters of the state, including rivers that flow into Narragansett Bay without proper treatment.

The plaintiffs challenge the legislation that conferred the foregoing powers on NBC and merged into that agency the communities that formerly had been in the BVDC service area. The plaintiffs assert that the CSO problems originate mainly in the older sewerage systems of Pawtucket and Central Falls, which have one-pipe construction into which both rain water and sewage are combined, unlike the newer, two-pipe systems of Cumberland, Lincoln, and Smithfield. However, according to the testimony of Paul Pinault, executive director of NBC and the only witness presented before the Superior Court, CSO problems emanate from excessive rainwater in all communities that comprise the NBC district. In their brief, plaintiffs assert that the Towns of Lincoln and Cumberland exclusively financed the expansions and upgrades to their sewer systems. However, NBC asserts otherwise, stating that the towns received substantial funding from the Department of Environmental Management, pursuant to the Sewage and Water Supply Failure Fund, G.L.1956 chapter 44.1 of title 42.

### Due Process and Equal Protection

The main thrust of plaintiffs' argument is that the Legislature has violated the due process and equal protection components

of both the State and Federal Constitutions in requiring residential and industrial users of the NBC district comprising all or a portion of ten municipalities to pay the expense of remediating the CSO problems that contribute to the pollution of Narragansett Bay. The plaintiffs argue that the state, through NBC, should either assess each community only that portion of the expense relating to the remediation that arises from its contribution to the CSO problem, or, in the alternative, impose the cost of remediation upon all residents of the state, instead of just those in the NBC district. In pressing this argument, plaintiffs misconceive the previous decisions of this Court and of the Supreme Court of the United States that accord great deference to the authority of a Legislature to address problems of statewide concern on a regional basis.

First, in respect to the Federal Constitution, the Supreme Court of the United States in the case of *Joslin Manufacturing Co. v. City of Providence*, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923), made the following pertinent comment in respect to the distribution of a burden of obtaining a pure water supply among the City of Providence and other municipalities that might benefit thereby. The specific question was whether it violated the Federal Constitution to require the taxpayers of the City of Providence to bear the burden of acquiring land and other facilities to furnish water that then could be sold to other municipalities at regular wholesale rates.

"That the taxpayers of one municipality may not be taxed arbitrarily for the benefit of another may be assumed; but that is not the case here presented. The communities to be supplied are those within the drainage area of the waters authorized to be taken. These waters are under the primary control of the State and in allowing the City of Providence to appropriate them, it was entirely just and proper for the legislature to safeguard the necessities of other communities who might be dependent there-

on, and to that end to impose upon the City of Providence such reasonable conditions as might be necessary and appropriate. Municipalities are political subdivisions of the State and are subject to the will of the legislature * * * and may be compelled not only to recognize their legal obligations but to discharge obligations of an equitable and moral nature as well. *Guthrie National Bank v. Guthrie*, 173 U.S. 528, 537[, 19 S.Ct. 513, 43 L.Ed. 796]. The requirement here in question is one well within the rule. Specifically, it is objected that the act does not require these other communities to bear a proportionate part of the cost of acquisition, construction and maintenance. The special facts which led the legislature to direct payment at wholesale rates, instead of upon the basis of sharing in the cost of the enterprise, or of some other, we need not consider. It may have been, as suggested, that there were inherent difficulties in the way of making such an apportionment. But it is enough to say that the method selected is one within the scope of legislative discretion and not obnoxious to the Federal Constitution. * * * The legislature is not precluded from putting a burden upon one municipality because it may result in an incidental benefit to another." *Joslin Manufacturing Co.*, 262 U.S. at 673–74, 43 S.Ct. at 687, 67 L.Ed. at 1173–74.

■ Thus, it is apparent that the Legislature need not apportion expenses with the same mathematical precision that plaintiffs might urge as appropriate. The legislative power is plenary, and as long as its chosen method bears a rational relationship to the legitimate end to be achieved, neither municipalities nor individuals may challenge the legislative choice solely on the ground that they could devise a better or more accurate method. In *City of Central Falls v. Halloran*, 94 R.I. 189, 179 A.2d 570 (1962), this Court rejected a constitutional attack upon the validity of legislation that authorized the creation of the BVDC, the predecessor of NBC. In

that case the City of Central Falls complained that it was required to pay for more than their expenses connected with the operation of the BVDC. Our Court responded that a municipality has no standing to "complain on the score that its rights under the federal constitution are violated by the act." *Id.* at 193, 179 A.2d at 572 (citing *Joslin Manufacturing Co. v. City of Providence*, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167 (1923)). The Court went on to observe "[n]or has a municipality any valid reason to complain because at some indefinite time in the future some other area in the district which has not contributed to the cost of the project from the beginning may be allowed to benefit." *Id.*

The Court had earlier stated that it was the express intention of the Legislature to "clothe the commission with such authority as would enable it to deal effectively with the problem of pollution in the area without consulting the wishes or convenience of the municipalities involved * * *. In other words it is reasonable to construe the act as intending to make the policy of the commission paramount in all such matters." *Id.* at 192, 179 A.2d at 571.

In *Halloran*, this Court unequivocally rejected the argument that the act creating the BVDC violated either the Federal or the State Constitutions on due process grounds. It also rejected the argument that the act constituted an unreasonable delegation of power to the BVDC. Indeed, this Court expressed doubt concerning whether a municipality as a mere creature of the General Assembly had any right to challenge the legislative act as violative of

the State Constitution. The Court did not decide that issue since it had not been raised. For purposes of this opinion, we shall assume without deciding, that the municipalities have the same standing to challenge the subject legislation as violative of the State Constitution as does the individual rate payer who has been joined as a party plaintiff.[1]

 In respect to the challenge on equal protection grounds, it is clear that the challenged legislation is economic in nature and is designed to achieve an improvement to the public health and welfare. Such legislation does not impinge upon a fundamental right and does not involve any suspect classifications. It is, therefore, presumed to be valid and need only pass the rational basis test. If the legislative classification is rationally related to the legitimate state interest of improving the public health and welfare by eliminating or palliating pollution of the public waters, the legislation does not offend either the State or the Federal Constitution. *See, e.g., City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (applying rational basis test); *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam) (same); *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.*, 716 A.2d 730 (R.I.1998) (same); *In re Advisory Opinion to the House of Representatives Bill 85-H-7748*, 519 A.2d 578 (R.I.1987) (same). In this case the challenged legislation has created a reasonable classification consisting of ten communities wherein the problem of pollution has aris-

---

1. Although we are not called upon to decide the issue in this case, it has long been settled as a matter of federal law that a municipal corporation has no standing to seek to restrain or challenge on Fourteenth Amendment grounds a statute of the state which has created it. *See, e.g., Risty v. Chicago, R.I. & P. Ry. Co.*, 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641 (1926) (Fourteenth Amendment does not restrain the power of the State and its agencies over its municipal corporations); *City of Trenton v. State of New Jersey*, 262 U.S. 182,

43 S.Ct. 534, 67 L.Ed. 937, 29 A.L.R. 1471 (1923) (same); *City of Newark v. State of New Jersey*, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943 (1923) (same). Further, as our Court suggested in *City of Central Falls v. Halloran*, 94 R.I. 189, 179 A.2d 570 (1962), it is doubtful that a municipality has standing to challenge a state statute under the Rhode Island Constitution with the probable exception that it can challenge an act of the General Assembly imposed upon it in violation of the Home Rule Amendment.

en and urgently needs, in the legislative judgment, to be remediated. This classification certainly bears a reasonable and rational relationship to a legitimate state interest in the public health and welfare. This legislation easily passes the test of both federal and state constitutional limitations in respect to their equal protection components.

### Equal Burden Clause

■ The Rhode Island Constitution provides in article 1, section 2, that "the burdens of the state ought to be fairly distributed among its citizens." The plaintiffs have contended that this provision is violated by the legislation in question. This argument must be rejected because the Equal Burden Clause adds nothing to the requirements of the Equal Protection Clause. This section is advisory and not mandatory. It is addressed to the General Assembly for the purpose of advice and does not clothe the courts with the power of enforcing restraint on the lawmaking power. See, e.g., Opinion to the Governor, 88 R.I. 202, 145 A.2d 87 (1958) (art. 1, sec. 2, is advisory and is not a constitutional restraint upon legislative power of the General Assembly); Crafts v. Ray, 22 R.I. 179, 46 A. 1043 (1900) (same); Cleveland v. Tripp, 13 R.I. 50 (1880) (same); In re Dorrance–Street, 4 R.I. 230 (1856) (same). It has been held that the standard of review in respect to this provision is substantially identical to the determination of whether challenged legislation meets the requirements of the Equal Protection Clause. City of Warwick v. Almac's, Inc., 442 A.2d 1265, 1270 (R.I.1982). Consequently no separate analysis is required to determine that legislation meeting the standards of the Equal Protection Clause also cannot be in violation of this advisory admonition.

### The Home Rule Amendment

■ The plaintiffs have asserted that the construction and control of a local sewage system is within the power of the local municipality and, therefore, legislation relating to the sewers cannot be adopted without the consent of the electors of the communities involved. This argument in the context of this case is without merit. It scarcely can be questioned that remediating pollution of Narragansett Bay is a matter of statewide concern (stipulation of fact number 35). Consequently, the provisions of article 13 of our State Constitution are not implicated, since by its very terms the Legislature reserves the power to act upon matters of statewide or regional concern. See, e.g., Lynch v. King, 120 R.I. 868, 877, 391 A.2d 117, 122 (1978) (noting that the Legislature reserved the power to act on statewide matters). In the case at bar, even the plaintiffs concede that the problem of pollution of Narragansett Bay is one of statewide interest and compelling concern. The legislation in question sweeps far beyond the borders of any of the individual municipalities incorporated into the NBC district. See also Newport Court Club Associates v. Town Council of Middletown, 716 A.2d 787, 790 (R.I.1998) (stating that municipalities have no inherent power to legislate on matters of statewide concern).

### Delegation of Legislative Power

■ The plaintiffs urge that delegating legislative power to NBC is unreasonable and, therefore, illegal. This question was virtually answered by our opinion in City of Central Falls v. Halloran, supra, in which we held that the Legislature acted within its powers in creating the BVDC, the predecessor of NBC. If that case were not considered conclusive by clear implication, certainly our opinion in Milardo v. Coastal Resources Management Council, 434 A.2d 266, 271–72 (R.I.1981) (approving the creation of the Coastal Resources Management Council in the face of a challenge brought on the grounds of inappropriate and improper delegation of legislative power) would obviate plaintiffs' challenge to NBC on this ground. The statute creating this agency specifically

outlines the policy to be followed by NBC, and contains findings that support the need for the special expertise of this agency to achieve the goal of eliminating or palliating pollution of Narragansett Bay, which is therein denominated as our "greatest natural resource." No subject of delegation could be more appropriate and valid in the totality of the circumstances of problems to be solved.

We have considered the other issues raised by the plaintiffs and conclude that they are without merit.

For the reasons stated, the appeal of the plaintiffs is denied. The judgment entered in the Superior Court is hereby affirmed. The papers in the case may be remanded to the Superior Court.