DECISION
This matter comes before the Court on plaintiff's Newport Court Club Associates d/b/a Newport Athletic Club ("Newport Court") Verified Complaint for Declaratory Judgment and Permanent Injunction against defendant Town Council of the Town of Middletown (the "Town"). Newport Court challenges the legality of the Town's 1999-2000 sewer budget in terms of the constitutionality of the 1999 amendments to the Middletown Sewer Enabling Act (the "Act"). Newport Court requests that the Town be enjoined from issuing and collecting sewer charges in the fiscal year 1999-2000, and charging Middletown sewer user's any fees until the passage of a new sewer budget which does not include charges legalized by the 1999 amendment. The parties have agreed to consolidate Newport Court's Motion for Preliminary Injunction with the decision on its merits. Jurisdiction of this Court is pursuant to R.I. Super. R. Civ. P. 65.
 Joint Stipulation of Facts
Newport Court is a Rhode Island limited partnership, whose Director and General Partner is Roger D. Grady, with a principal place of business at 66 Valley Road, Middletown, Rhode Island. The proposed plaintiff class is comprised of all sewer-fee ratepayers for the tax year 1999-2000 in the Town of Middletown, Rhode Island. The proposed plaintiff class are all owners of real property in the Town of Middletown who have been sent sewer bills by the Town for the tax year 1999-2000. The Town Council is comprised of George L. Andrade, Jr. (President), Bruce Allen, William I. Flynn, Michael P. Kehew, Paul Rodrigues, Scott McLeish, and Mary Nunes.
The Town annually issues sewer bills only to those property owners in Middletown who are connected to the sewerage system. The group of people and entities who receive sewer bills is a subset of the general group of taxpayers in the Town. For instance, owners of vacant land and owners of property with private septic systems which are not connected to the sewerage system do not receive sewer bills from the Town. The Town mails out its sewer bills along with property tax bills. However, the sewer charges are separately set forth on property tax bills and are specifically listed as a separate charge owed to the Town.
Prior to the recent passage of Senate Bill 99-1006-Sub. A. 9 (the "1999 Statute"), the Act, as amended, did not allow the Town to assess charges against sewer users in the Town for its debt service or its capital costs with respect to the sewerage system. In August 1998, the Rhode Island Supreme Court issued its opinion in the case of Newport Court Club Associates v. Town Council ofthe Town of Middletown, 716 A.2d 787 (R.I. 1998) ("Newport CourtClub I"). The Supreme Court ruled, inter alia, that pursuant to the terms of the Act, the Town could not include charges for debt service and capital costs in its sewer bills.
On April 19, 1999, the Town passed a resolution supporting and approving the introduction of legislation in the General assembly to amend the Act. The legislation sought to amend the Act to afford the Town Council the discretion to include in its sewer assessment costs for debt service and capital improvements related to the sewerage system. On June 1, 1999, the Senate passed die 1999 Statute amending the Act so that the Town, in its discretion, can charge sewer users for debt service, construction costs, and capital improvements related to the sewerage system. On or about June 21, 1999, the House of Representatives approved the 1999 Statute. On or about July 2, 1999, the 1999 Statute became effective.
The 1999 Statute has not been approved by a majority of the qualified electors of the Town, voting at either a general or special election. On July 9, 1999, the Town passed the 1999-2000 sewer budget. The parties agree that the 1999-2000 sewer budget contains charges attributable to debt service as part of the Town's annual sewer assessments. The Town passed and adopted the 1999-2000 sewer budget in reliance upon the authority conferred to it by the amendments contained in the 1999 Statute. The Town has now issued sewer bills for the tax year 1999-2000, with the first quarterly payment due on September 10, 1999.
Middletown is a home-rule community having passed a Home Rule Charter which was ratified by a majority of the qualified electors of the Town on November 5, 1968. The Town's Home Rule Charter became effective on December 16, 1968. Pursuant to § 11A of the Act, an aggrieved sewer ratepayer in the Town may appeal their bills in accordance with the exclusive statutory remedies set forth in G.L. 1956 (1995 Reenactment) §§ 44-5-26
and 44-5-27 (the Tax Appeal Statute). The Act itself was submitted to the voters of Middletown and was ratified by them at a special financial meeting held on November 24, 1958. All acts of the General Assembly that have authorized the issuance of bonds for sewer expansions in the Town have specifically referred to the Act and have required the approval of the Town's electors.See, e.g. Pub. Laws 1968, ch. 50. Section 207(g) of the Middletown Town Charter provides: "Bond Limitation Without Referendum. No bonds shall be issued pledging the credit of the town in excess of one hundred thousand ($100,000) do]lars in any one fiscal year unless submitted to a vote of the electors at either a general or special election, and approved by a majority of the electors voting at said election."
The Act was amended in 1973 by Pub. Laws 1973, ch. 179. The amendment also provided for the following: "The question of the approval of this act shall be submitted to the electors of the town of Middletown at the next general or special election following the passage of this act" Pub. Laws 1973. ch. 179, § 2. The 1973 special act containing the amendment was submitted to a special election in the Town on August 7, 1973, and was approved by a majority of the electorate on that date.
The Town admits that if it were required to transfer charges for debt service and capital improvements from the sewer bills onto the Town's 1999-2000 tax assessments, the Town would exceed the 5.5% levy cap allowed by G.L. 1956 (1995 Reenactment) §44-5-2. The Town would then have to seek special approval from the Rhode island Department of Administration and the Rhode Island Auditor General's Office for its annual tax levy since the additional charges would push the Town's tax assessment beyond the maximum increase allowed by law.
 Declaratory Judgment and Permanent Injunction
Newport Court argues that the 1999 Statute is unconstitutional pursuant to R.I. Const., art. XIII, § 4 as the amendment to the Act relates to the "property, affairs and government" of the Town and requires approval by its electors. Since Middletown adopted a Home Rule Charter, the General Assembly may only enact legislation applicable to all cities and towns in Rhode Island, or enact special legislation that must be approved by a majority of the Town's qualified voters at a general or special election. Newport Court asserts that the voters of the Town have never approved the 1999 Statute. Additionally, the 1999 Statute is contrary to Section 207(g) of the Middletown Town Charter which requires the approval of Middletown voters for the issuance of bonds and notes.
Newport Court contends that the Town's reliance on R.I. Const., art. XIII, § 5 is erroneous as the foregoing section implicates tax-enabling legislation and not a municipality's imposition of user fees. Newport Court alleges that the Town has attempted to circumvent the Supreme Court's ruling in NewportCourt Club I by utilizing special legislation. Newport Court maintains that the payment of debt service and capital improvements are not taxes under the 1999 Statute as the Town would exceed its annual levy cap. As such, the 1999 Statute simply authorizes the Town to charge its users for these items. Newport Court argues that the 1999 Statute amends a local law which for forty years provided that user fees are charged to compensate the Town for operation and maintenance costs only, while debt service and capital improvements was a general funding obligation for all taxpayers of the Town.
Newport Court asserts that the 1999 Statute denies Middletown sewer users equal protection under the United States and Rhode Island Constitutions. Newport Court states that the Court should analyze the 1999 Statute as an economic legislation entitled to a rational basis review. However, the Town has never articulated what legitimate state interest the 1999 Statute advances, or how the 1999 Statute is related to that interest. Newport Court posits that the Town fails to tax all Middletown taxpayers with debt service and capital improvements, and has created an exempt class of taxpayers resulting in an arbitrary, irrational, and discriminatory classification bearing no rational relationship to the public safety or health.
Newport Court maintains that debt service and capital improvements should be classified as a tax and not a fee. A tax would be charged to all taxpayers of the Town while a fee would be assessed only to those who use the system. Although the Supreme Court has not addressed the distinction between user fees and taxes, it has stated that a sewer charge is not a tax. Newport Court asserts that the 1999 Statute is a disguise for the Town to assess a fee as a tax which otherwise would be a general funding obligation. Newport Court argues that debt service and capital improvements do not confer a particularized benefit on sewer users only, and are not collected to compensate the Town for its operation and maintenance expenses. The 1999 Statute allows the Town to discriminate against a class of people and entities (sewer users) by denying them equal protection under the United States and Rhode Island Constitutions.
Newport Court also argues that the 1999 Statute violates the due process clause of both the United States and Rhode Island Constitutions. Newport Court contends that the Town Council has denied Middletown sewer users due process by circumventing the voter approval requirements of R.I. Const, art. XIII, § 4 and the tax levy cap of G.L. 1956 (1995 Reenactment) § 44-5-2. Additionally, the General Assembly has unlawfully delegated its plenary power in the 1999 Statute by empowering the Town with unbridled discretion each year as to whether or not to assess debt service for sewer bonds on either all taxpayers or on a subset of taxpayers. Newport Court maintains that even if RI. Const., art. XIII, § 5 is applicable in this case, the unfettered discretion given to the Town Council to charge the items as either fees or taxes is unconstitutional.
The Town argues that the 1999 Statute is constitutional under R.I. Const., art. XIII, Home Rule for Cities and Towns. The Town contends that the dispositive issue in this mailer is whether the 1999 Statute was enacted under Rd. Const. art. XIII, § 4 or § 5. Although R.I. Const. art. XIII, § 4 specifies that if the General Assembly acts "in relation to the property, affairs and government of a particular city or town," the action becomes effective only upon majority vote of the qualified electors in said city or town. However, the Town asserts that the 1999 Statute was enacted pursuant to R.I. Const. art. XIII, § 5 which states as follows: "Nothing contained in this article shall be deemed to grant to any city or town the power to levy, assess and collect taxes or to borrow money, except as authorized by the general assembly." Since the General Assembly acted pursuant to its exclusive authority granted under § 5, electorate approval was not required.
The Town asserts that the Supreme Court in Newport Court ClubI held that the General Assembly has the exclusive power under R.I. Const, art. XIII, § 5 to determine whether or not the Town may assess sewer uses only for debt service and capital improvements costs. The Town contends that the General Assembly has authorized other municipalities to include debt service and capital improvements in its sewer charges. The Supreme Court stated that the Town cannot rely on its home rule powers to assess sewer users for debt service and capital improvements without authorization from the General Assembly.
The Town contends that the 1999 Statute provides the Town with the foregoing assessment powers without violating the takings, due process, and equal protection clauses of both the United States and Rhode Island Constitutions. The Town has the discretion to make special assessments upon owners of property who benefit by a local public improvement. The General Assembly has the discretion to pass legislation allowing the Town to charge those users the costs of debt service and capital improvements without resulting in a taking of private property as long as the action is not illegal and in the guise of taxation. The Town argues that Newport Court has not identified any protected property or liberty interest that falls under the due process clause. In regard to the equal protection argument, the Town asserts that this case does not involve a fundamental right and is not related to a suspect classification. As such, the 1999 Statute need only be rationally related to a legitimate state interest. If a challenged economic statute promotes a legitimate state interest as in this case, the Town maintains that Newport Court's equal protection claim must fail.
The power to levy, assess, and collect taxes is reserved solely for the General Assembly under R.I. Const., art. XIII, § 5. Newport Court's accusation of unconstitutionality prompts an examination of the article in question. Newport Court argues that the Rhode Island Constitution states as follows: "The general assembly shall also have the power to act in relation to the property, affairs and government of a particular city or town provided that such legislative action shall become effective only upon approval by a majority of the qualified electors of the said city or town. . . ." R.I. Const., art. XIII, § 4. However, § 5 of the same article addresses the issue in this case with the greatest clarity, stating: "Nothing contained in this article shall be deemed to grant to any city or town the power to levy, assess and collect taxes or to borrow money, except as authorized by the general assembly." R.I. Const., art, XIII, § 5. Any argument by Newport Court pertaining to § 4 is meaningless when read separately and apart from § 5.
As often stated, when the language of a statute is unambiguous and clear in meaning, the Court must interpret the statute literally and give the words of the statute its plain and ordinary meaning. RIH Med. Found., Inc. v. Nolan,723 A.2d 1123 (R.I. 1999). Section 5 of the Rhode Island Constitution reads perfectly clearly — the power remains in the hands of the General Assembly to grant cities and towns authority to levy, assess and collect taxes or to borrow money. See Opinion toHouse of Representatives, 79 R.I. 277, 280, 87 A.2d 693, 696 (1952). The action by the Town in suggesting legislation to the General Assembly regarding the expansion of the Town's sewer assessment powers was within the best interests and powers of the Town as granted by the Constitution.
The existence of a Home Rule Charter does not require local voter approval of legislation pertaining to taxation. WarwickMall Trust v. State of Rhode Island, 684 A.2d 252, 253-56 (R.I. 1996). In the foregoing case, the owner/operator of a mall challenged the constitutionality of legislation pertaining to a long-term tax-exemption agreement. The Supreme Court held that "[d]espite the addition of the home rule article to Rhode Island's Constitution in 1951, cities and towns remain powerless `to levy, assess and collect taxes or to borrow money, except as authorized by the general assembly.'" Id. at 253 (quoting R.I. Const., art XIII, § 4). Therefore, Newport Court's argument that Middletown's 1968 Home Rule Charter requires a majority vote in the case of tax assessment is without merit.
A return to the Newport Court Club I case is appropriate as the decision served as the basis for the actions of the Town relating to the 1999 Statute. In Newport Court Club I, Newport Court argued that the right to assess users for debt service and capital improvements, inter alia, fell beyond the powers of the Town as the Town was bound by the 1958 Act and the 1958 Act only. The Supreme Court specifically affirmed the granting of summary judgment with respect to the annual charges for debt service "since the text amended § 10 is plain and unambiguous, has not been amended by the General Assembly, and specifically prohibits Middletown from assessing sewer users for debt service incurred as a result of the construction of the sewer system. . . ." 716 A.2d at 790 (emphasis added). Referencing such statements, the Town believed that the correct process for amending the 1958 Act was to introduce legislation in the General Assembly.
Now, Newport Court has changed its tune. In Newport Court Club I, Newport Court argued for the sovereignty of the General Assembly and the impotence of the Town itself when it came to possessing the power to assess charges outside of the 1958 Act. In the case at bar, Newport Court is humming unconstitutionality after the General Assembly passed legislation amending the Act to vest the Town with power to assess what was previously forbidden items, debt service and capital improvements. Newport Court's tune does not hold up against R.I. Const., art. XIII, § 5 of the same Constitution it alleges the Town has violated.
Newport Court suggests that the sewer assessments of debt service and capital improvements are not taxes, but rather charges. As charges, Newport court contends that the assessments require the approval of a majority of the Town's qualified electorate. Newport Court's wordplay is irrelevant. Whether the assessments amount to fee, taxes, or any other title, they have already been declared by the Supreme Court in NewportCourt Club I to be permitted only by the General Assembly. Lewis Carroll was not referring to sewer fees in the following passage from Alice's Adventures in Wonderland, but his analysis is nonetheless applicable:
 `Come, we shall have some fun now!' thought Alice. `I'm glad they've begun asking riddles. — I believe I can guess that,' she added aloud.
 `Do you mean that you think you can find our the answer to it?' said the March Hare.
 `Exaclty so,' said Alice.
 `Then you should say what you mean,' the March Hare went on.
 `I do,' Alice hastily relied. `At least — at least I meant what I say — that's the same thing, you know.'
 `Not the same thing a bit!' said the Hatter. `You might just as well say that "I see what I eat" is the same thing as "I eat what I see!'"
The Court is inclined to agree with the March Hare in this matter. Newport Court, though it surely means what is says, does not seem to have said with it meant. The Supreme Court has ruled specifically on the issue of debt service and capital improvements, which remain the same no matter what they are called.
The analysis in this matter begins and ends with the statement that the General Assembly retains exclusive power to legislate by general or special acts in granting to a city or town the power to "levy, assess and collect taxes or to borrow money." R.I. Const. art. XIII, § 5; SeeOpinion to House of Representative, 79 R.I. 277, 280,87 A.2d 693, 696 (1952). The foregoing assertion was upheld in Newport Court Club I, and the Town acted upon that decision to suggest legislation to the General Assembly (the 1999 Statute). The General Assembly properly enacted the 1999 Statute under § 5 and not § 4 of the Rhode Island Constitution. Therefore, a majority vote of the Town's electorate is unnecessary. The 1999 Statute is indeed constitutional, and the 1999-2000 budget, based upon that amendment, is legal.
The Court reminds Newport Court that while the people of the Town are not granted a vote on this specific policy decision, their voice can still be heard regarding this issue. The Town Council still remains answerable to the public for any policy decision they render through a variety of forums. The people of the Town are able to voice their questions and concerns by petitioning the Town Council for grievances and/or attending public hearings on town matters. Most importantly, the people of the Town retain the power to take to the ballot boxes every two years and express, if necessary, their displeasure with their Town Council. Although the people of the Town may be disgruntled with the new sewer assessment, it is not the responsibility or position of the Court to gainsay the proper authority given to the Town by the General Assembly. As such, Newport Court's Verified Complaint for Declaratory Judgment and Permanent Injunction is denied.
Counsel shall submit an appropriate order for entry.