NEWPORT COURT CLUB
ASSOCIATES et al.

v.

TOWN COUNCIL OF the TOWN
OF MIDDLETOWN.

No. 96–646–Appeal.

Supreme Court of Rhode Island.

Aug. 5, 1998.

Randall Souza, Fred A. Kelly, Jr., Providence, for Plaintiff.

Steven M. Richard; Peter J. McGinn, Rebecca Tedford Partington, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on the appeal of the town of Middletown (town or Middletown) from the entry of partial summary judgment in two separate actions brought by several commercial property owners, including Newport Court Club Associates, a health club; Melbro, Inc., a mobile-home park; and George and Janet Silvia, operators of a laundromat (collectively plaintiffs). The plaintiffs had filed suit against the town, which operates a municipal sewerage system that serves some of, but not all, the commercial and residential establishments within the town.[1] The plaintiffs, who are users of this system, challenged the town's sewer assessments for fiscal years 1993–1994 and 1994–1995. Of particular importance to this case, however, is the fact that the town neither operates nor owns a facility to treat or to dispose of its waste water and therefore contracts with the city of Newport (Newport) to satisfy these needs. For reasons that shall become apparent, we affirm the judgment in part and reverse it in part.

Middletown originally undertook the task of municipal sewerage disposal pursuant to an act of the General Assembly codified at P.L.1941, ch. 1103 (1941 act). This act created a sewer commission and authorized the town to finance, to construct, to maintain, and to operate a sewer system. *See id.* at §§ 1, 2, 5. Without question the 1941 act was a comprehensive legislative scheme that authorized the town to borrow a maximum of $250,000 in order to pay for the sewer-system project, as well as assessing its users annual charges for the operation and maintenance of the system. *See id.* at §§ 5, 10. Significantly the 1941 act also provided that debt incurred in connection with the con-

struction of the sewer system should remain an obligation of the town. *See id.* at § 8.

In 1945, however, the 1941 act was amended and the sewer commission was eliminated. *See* P.L.1945, ch. 1574, § 1. The amendment further provided that the responsibilities and the duties of the commission would be transferred to the Middletown Town Council. *See id.* Then in 1956 and again in 1957 the act was amended to authorize the town, with the approval of the electors, to borrow additional funds in order to finance expansions of the sewer system. *See* P.L.1957, ch. 133, § 1; P.L.1956, ch. 3647, § 1. Finally in 1958 the remnants of the 1941 act were entirely amended by P.L.1958, ch. 138, § 1 (1958 act). It is this 1958 act that serves as the focus of the instant appeal.

In a manner similar to the 1941 act, the 1958 act explicitly provided that debt incurred by the town for the construction of its sewer system remained an obligation of the town and was to be paid from the town's general revenues.[2] *See* P.L.1958, ch. 138, § 1. The 1958 act also provided that annual expenses for the operation, maintenance, and repair of the system, which included the costs associated with the treatment and disposal of waste water, shall be borne by its users and assessed on an annual basis. *See id.* Furthermore, the 1958 act contained provisions for the financing of capital improvements and the authority to assess charges to its users. Specifically, amended § 9 of the 1958 act provided that all charges assessed to the system's users shall be sufficient to cover the annual operating and maintenance costs, *"but [may] not includ[e charges for] debt service."* (Emphasis added.) Instead amended § 6 governed the payment of debt service and directed the town to make an annual appropriation for this expense.[3] *See* P.L.1958, ch. 138, § 1. Finally,

---

1. This action was originally commenced as a potential class-action lawsuit; however, the motion for class certification pursuant to Rule 23 of the Superior Court Rules of Civil Procedure was denied. That ruling is not before this Court.

2. The 1958 act also provides for front-footage assessment upon the owners of any land that abuts a street or a road where a lateral sewer line is installed. *See* P.L.1958, ch. 138, § 1. This

act and its subsequent amendments provide for the manner in which this assessment is to be determined and the manner in which it is to be collected. This issue is also not before the Court, however, and therefore shall not be discussed.

3. Public Laws 1958, ch. 138, § 1 amending former § 6 provides:

"Sec. 6—All bonds and all temporary notes issued under the provisions of this chapter and

amended § 11 of the 1958 act provided that if the annual charges were to exceed the annual expenses, "the surplus shall be credited to the annual charges of the next succeeding year," whereas a deficiency amount "shall be added to the annual charges of the next succeeding year unless the electors *** order the town council to make a special sewer assessment *** in an amount sufficient to satisfy such deficiency."

Like many municipalities Middletown experienced numerous changes throughout the years in the growth of its population, the complexity of its municipal finances, and the form of its government. Chief among Middletown's changes was the adoption and ratification of a home rule charter in 1968. Despite self-government, the town has made little or no change in the manner in which it operates or finances its sewer system other than adopting an ordinance in 1974 that the annual sewer charges assessed to its users be computed by estimating annual water usage and entering into a twenty-year agreement with Newport in 1985 for the treatment and disposal of its waste water. Furthermore, in response to protests that the manner of assessing annual sewer charges (based upon water usage) was unfair to the town's larger consumers, the Middletown Town Council adopted a two-tiered rate system as a means of providing some relief to commercial users.[4]

The plaintiffs filed suit, seeking reimbursement for that portion of sewer assessment included in their 1993–1994 and 1994–1995 sewer bills that they alleged illegally charged for (1) debt service of the town on revenue bonds, (2) funding of a surplus/contingency fund, (3) capital improvements to the town's sewer system that plaintiffs alleged extended beyond routine maintenance and repair, and (4) debt service and/or capital costs associated with Newport's waste water facilities payable pursuant to the 1985 agreement with Newport.

A justice of the Superior Court granted plaintiffs' motion for partial summary judgment declaring all four categories of assessments invalid and subsequently issued a permanent injunction enjoining the town from assessing sewer users any charges related to the four categories.[5] The town moved for certification pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure and a stay of the judgment pending appeal. Both motions were granted, and this appeal ensued.

On appeal, plaintiffs continue to insist that these four categories of charges are prohibited under the terms of the 1958 enabling act and that the 1958 act is the only authority from which the town derives its assessment and borrowing powers. In contrast, Middletown, although conceding that its manner of assessing sewer users is not in accordance with the 1958 act, maintains that it has the authority to assess sewer fees on its users pursuant to its home rule charter. The town notes that the 1958 sewer enabling act was enacted prior to the adoption of its home rule charter and that at that time all of the town's

the debts evidenced thereby shall be obligatory on the town of Middletown in the same manner and to the same extent as other debts lawfully contracted by it but no pledge of any special funds to their payment is intended by this chapter. The bonds and notes issued hereunder shall be excepted from the operation of section 45–12–2 of the general laws, as amended. No such obligation shall at any time be included in the debt of said town for the purpose of ascertaining its borrowing capacity. *The town shall annually appropriate a sum sufficient to pay the interest upon bonds and also to pay the principal of any bonds maturing in such year, until said bonds and the interest thereon are paid in full.*" (Emphasis added.)

4. Count 7 of the complaint alleged impropriety in annual assessments based upon water usage

for inflow and infiltration of ground water and rain water associated with defective or deteriorating sewer lines. With respect to this count summary judgment was denied, and this issue is not before the Court.

5. The parties entered into a stipulation of facts for purposes of establishing damages in accordance with the entry of partial summary judgment. As agreed, the total amount of disallowed assessments for the 1993–1994 fiscal year was $745,310 of the town's sewer budget of $1,681,066, and the total amount of disallowed assessments for the 1994–1995 fiscal year was $661,881 of the town's sewer budget of $1,676,626. The amounts of the disallowed assessments owed to plaintiffs required a recalculation of the sewer bills based upon sewer budgets that did not include the disallowed items.

powers were derived from the Legislature. *See Women & Infants Hospital v. City of Providence,* 527 A.2d 651, 652 (R.I.1987). The town argues, however, that its decision to adopt a home rule form of government cloaked it with an independent source of power from which it can now legislate to levy and to collect assessments in excess of the authority contained in the sewer enabling act. To support this theory, the town relies on *Westerly Residents for Thoughtful Development, Inc. v. Brancato,* 565 A.2d 1262, 1264 (R.I.1989), in which we held that sewers and the operation of a sewer system are matters of purely local concern, as well as the sewer enabling act, which the town contends is additional evidence supporting the delegation of authority to assess sewer users the reasonable costs associated with the operation and maintenance of a sewer system.

Historically this Court has recognized that a municipality's sewers and drains, as well as the expansion of its sewer district, were matters incidental to municipal government with which the General Assembly may not ordinarily interfere. *See id.* at 1264. Moreover, we have concluded that any act of the General Assembly relating to a municipality with a home rule charter is not valid unless the act is applicable to all cities and towns in Rhode Island or it is approved by a majority of the qualified voters of the city or town at a general or a special election. *See Bruckshaw v. Paolino,* 557 A.2d 1221, 1223 (R.I.1989); *Opinion to the House of Representatives,* 79 R.I. 277, 281–82, 87 A.2d 693, 696 (1952).

In *Brancato,* this Court declared that the authority to regulate the placement of sewers in the town of Westerly, as well as the authority to expand its sewer system, was inherently derived from the town's home rule charter. *Id.* We stated that

"Rhode Island's Home Rule Amendment grants authority to every city and town to enact a home rule charter, which gives the town the right of self-government in all local matters as long as the charter is 'not inconsistent with this Constitution and

laws enacted by the general assembly in conformity with the powers reserved to the general assembly.' " *Id.* at 1263–64.

■ In contrast, municipalities have no inherent power to legislate on matters of state-wide concern or upon matters that are specifically reserved to the General Assembly by our State Constitution, such as article 13, section 5, which reserves to the General Assembly matters relating to taxation and borrowing money.[6] In *Costello v. Ricci,* 121 R.I. 509, 512, 401 A.2d 38, 40 (1979), however, we held that sewer charges are not ordinarily to be considered a tax. Nevertheless we are of the opinion that the assessments in this particular case extend beyond the permissible annual-use charges.

■ It is undisputed that at least a portion of Middletown's annual sewer budget contains an appropriation for the payment of debt service in connection with the town's bonded indebtedness. This assessment is clearly in contravention of amended § 10 of the 1958 act, which requires debt service to be paid from the town's general revenues. *See* P.L.1958, ch. 138, § 1. We have stated on numerous occasions that " '[w]hen the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning.' " *C & J Jewelry Co. v. Department of Employment and Training, Board of Review,* 702 A.2d 384, 385 (R.I.1997). Therefore, since the text of amended § 10 is plain and unambiguous, has not been amended by the General Assembly, and specifically prohibits Middletown from assessing sewer users for debt service incurred as a result of the construction of the sewer system, we affirm the grant of summary judgment with respect to the annual charges for debt service.

In addition Middletown's budget also contains an appropriation for capital improvements, which may or may not include appro-

---

**6.** Section 5 of article 13 of the Home Rule Amendment to Rhode Island's Constitution provides:

"Nothing contained in this article shall be deemed to grant to any city or town the power

to levy, assess and collect taxes or to borrow money, except as authorized by the general assembly."

priations in excess of those necessary for routine maintenance and repair of the sewer system. The trial justice enjoined the town from charging sewer users for repairs that were beyond "routine and normal maintenance," and on appeal the town argues that this injunction does not provide adequate criteria to distinguish between an ordinary repair and an extraordinary repair. We are satisfied, however, that there is no genuine issue of material fact with respect to this issue considering the town's specific grant of authority to assess users for the cost of "maintenance and repair of the sewerage works, including sewers constructed in public streets, highways or rights of way." P.L. 1958, ch. 138, § 1. Furthermore, even if the trial justice did not specify the precise criteria to employ in order to distinguish between ordinary and extraordinary repairs, as the town alleges, article III of the Middletown Town Code, entitled "Capital Improvements," not only provides a definition of capital improvements, but also sets forth a detailed procedure for undertaking a capital improvement project in the town. Thus we are of the opinion that adequate guidelines exist and that, therefore, the grant of summary judgment with respect to capital improvements is also affirmed.

Nevertheless, the town continues to maintain the validity of its present assessment procedures and directs our attention to chapter 14 of title 45. The town's reliance on this chapter, however, is misplaced since this enactment merely delegates to all cities and towns the authority to enact ordinances assessing sewer users reasonable charges for its use—authority that Middletown has possessed since 1941. *See* P.L.1941, ch. 1103; *see also* § 45–14–1 (the General Assembly's grant of power is "[i]n addition to such powers, privileges, prerogatives, and authority as are now granted to each city and town *** each city and town is hereby authorized and empowered to enact ordinances assessing users of sewers or sewer systems of the respective cities and towns, a charge for the use of the sewers or sewer systems in such an amount as bears a reasonable relation to the cost to the city or town"); § 45–14–3.[7] Therefore, Middletown may not rely on chapter 14 as a source of authority to depart from restrictions that prevent it from borrowing money or assessing taxes on sewer users unless authorized by the General Assembly.

The complaint in this case centers on allegations that Middletown charges its sewer users for expenses not associated with the ordinary operation and repair costs of the sewer system, including the payment of interest and principal on revenue bonds approved by the taxpayers at a general or a special election. All subsequent acts of the General Assembly that have authorized the issuance of additional bonds for sewer expansions, however, have specifically referred to the sewer enabling authority and have required the approval of electors, as well as referring to specific provisions for repayment. *See, e.g.,* P.L.1968, ch. 50. From this we conclude that the General Assembly intended that these obligations be the responsibility of all Middletown taxpayers and not be borne exclusively by the users of the sewer system. Therefore, we conclude that neither the home rule charter nor the provisions of the sewer enabling act have any application to the manner in which Middletown retires its debt in connection with expansions to its sewer system. We recognize that the electors may very well have approved the issuance of bonds and notes to expand sewer service to additional commercial and residential users with the understanding that the debt would be repaid by the system's users and that absent this understanding, the bond issue may not have been approved by the voters. This unfortunate misinterpretation of the town's enabling authority, however, does not relieve the taxpayers of their responsibility to repay bonds and notes issued upon the approval of the voters.

---

7. General Laws 1956 § 45–14–3 provides:

"This chapter is not to be construed as revoking, altering, or amending any provisions of law for sewer assessment now lawfully assessed by any city or town, but it is to be construed as authorizing a charge for the use of those sewers or sewer systems for disposal purposes, and in addition to all other sewer assessments now lawfully imposed by the city or town, under the provisions of any general, public or special law, charter, act, or resolve, and any ordinance now in effect."

■ We next consider the challenge to that portion of Middletown's sewer budget that includes an appropriation to maintain a surplus/contingency fund. The trial justice agreed with plaintiffs that Middletown has no authority to maintain a surplus/contingency fund pursuant to the sewer enabling act. Amended § 11 of the 1958 act provides that if the annual receipts from the user charges "amount in any year to more than is required for the purposes thereof, the surplus shall be credited to the annual charges of the next succeeding year." Conversely this section also provides that a deficiency in operating revenue "shall be added to the annual charges of the next succeeding year unless the electors in town meeting order the town council to make a special sewer assessment upon those subject to the annual charges in an amount sufficient to satisfy such deficiency." P.L.1958, ch. 138, § 1.

This section clearly contemplates that surplus funds will not be spent for any other municipal purpose and unequivocally states that "the surplus *shall* be credited to the annual charges of the next succeeding year." *Id.* (Emphasis added.) Furthermore, this section also explicitly provides that any "deficiency *shall* be added to the annual charges of the next succeeding year." *Id.* (Emphasis added.) Therefore we discern no error with respect to this portion of the trial justice's decision.

■ The final challenge to the town's assessments relates to Middletown's 1985 contract with Newport concerning the treatment and disposal of the town's waste water. The plaintiffs argued that this agreement obligates them to pay a proportionate share toward the capital improvement of Newport's treatment facilities and thus constitutes payment for debt services in violation of the sewer enabling act. Middletown counters that its authority to contract with Newport is derived from its home rule charter. Although we reject Middletown's argument we conclude that the 1985 contract is authorized by amended § 16 of the 1958 act, which enables the town council, "when so directed by the electors in town meeting," to enter into any contract with a local, state, or federal government for the use of its treatment facilities.

Here it is undisputed that Middletown and Newport entered into a contract in 1985. This contract terminated all previous waste water treatment agreements and provided a formula for measuring the anticipated flow of waste water from Middletown to Newport. The 1985 contract also included calculations for Middletown's proportionate share of Newport's capital costs based upon anticipated waste water flow, as well as provisions that Middletown pay the previously contracted share of Newport's overall operation and maintenance costs associated with its collection and treatment facilities. These charges range from 17.9 percent to 19.6 percent of the overall operation and maintenance cost of Newport's waste water facilities. Middletown asserts that its agreement with Newport is analogous to an operating lease because it represents the actual expense to Middletown for the use of Newport's facilities. Moreover, Middletown maintains that since it does not possess an ownership interest in the Newport facilities, the contract costs cannot amount to capital costs or debt service. Thus Middletown contends that the annual fees assessed by Newport constitute additional cost to that city for treating Middletown's waste water and are therefore properly chargeable to its users. The plaintiffs contend, and the trial justice found, that the payment of a proportionate share of Newport's capital costs is akin to the payment of debt service, which Middletown is precluded from assessing its users. *See* P.L. 1958, ch. 138, § 1. We disagree.

In order to place the prohibition against the payment of debt service as codified in amended § 9 in its proper context, we must examine the legislative history in its entirety. Clearly, from as early as 1941 the Legislature intended to provide that debt incurred by the town in connection with the installation of sewers be approved by the electors and remain the obligation of the taxpayers. *See* P.L.1941, ch. 1103, §§ 5, 8. It is equally clear that the General Assembly intended that the system's users bear the expense of operating the sewers, including the costs associated with collection and treatment. *See*

*id.* at § 10. The contract with Newport, however, is not for the payment of Middletown's debt service nor is the contract for any capital acquisitions acquired by Middletown. Instead we are satisfied that the annual payments to Newport are expenses associated with the collection and treatment of waste water generated by the users of the system. We note that the annual sewer budget merely reflects an aggregate appropriation entitled "Sewage Disposal" and is not segregated into costs for treatment and capital improvements. Therefore, we conclude that this contract is within the provisions contemplated by amended § 16 of the 1958 act and does not represent payment for debt service. We vacate that portion of the judgment prohibiting the town from assessing sewer users the charges associated with its Newport contract.

For the foregoing reasons we deny Middletown's appeal with respect to the trial justice's judgment prohibiting the town from (1) charging sewer fees for debt service on its bonds, (2) funding a surplus/contingency fund, and (3) assessing sewer users for capital improvements beyond routine and normal maintenance. We sustain Middletown's appeal with respect to the trial justice's judgment prohibiting the town from assessing its sewer users the costs associated with its 1985 contract with Newport. The judgment appealed from is affirmed in part and vacated in part. The papers in this case are remanded to the Superior Court for entry of judgment in accordance with this opinion.